# PROCTOR HEYMAN ENERIO LLP

### PRACTICING THE ART OF LAW

300 DELAWARE AVENUE • SUITE 200 • WILMINGTON, DELAWARE 19801
TEL: 302.472.7300 • FAX: 302.472.7320 • WWW.PROCTORHEYMAN.COM

Direct Dial: (302) 472-7311
Email: dgattuso@proctorheyman.com

August 16, 2016

*VIA CM-ECF AND HAND DELIVERY*
The Honorable Chief Judge Leonard P. Stark
United States District Court
For the District of Delaware
844 North King Street
Wilmington, DE 19801

Re: *Bayer Pharma AG et al. v. Watson Laboratories Inc.*, C.A. No. 1:12-cv-1726-LPS

Dear Chief Judge Stark:

Defendant Watson Laboratories, Inc. submits this letter brief in support of its proposed final judgment and in response to plaintiffs' (collectively, "Bayer") August 9, 2016 letter brief (D.I. 160) in accordance with the Court's August 3, 2016 Order (D.I. 159). No depositions are required at this time as Bayer did not submit any new declarants in support of its letter brief. As detailed below, Bayer is not entitled to injunctive relief under 35 U.S.C. § 271(e)(4)(B).

To be entitled to an injunction under controlling principles of equity, "[a] plaintiff must *demonstrate*: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (emphasis added). Bayer has failed to present evidence to show that any of the four factors supports the entry of a permanent injunction and, therefore, its request for an injunction should be denied.

### I. Bayer has not and will not suffer irreparable injury.

In terms of total sales, the Natazia® product is one of the smallest drugs (if not the smallest) in Bayer's whole portfolio. Catherine Holtz, Bayer's 30(b)(6) witness [REDACTED] Bayer's massive corporate revenues, exceeding over €40.2 billion annually in 2013. [REDACTED] Ex. 2 at 3, 151. Natazia® is so insignificant to Bayer that it does not even appear on Bayer's omnibus list of products on its current website, which supposedly identifies Bayer's products "From A to Z." Ex. 3. And this case was not important enough to merit a mention in Bayer's list of patent cases in its latest annual report. Ex. 4 at 29. Despite bearing the burden of proof, Bayer does not, indeed cannot, begin to explain how the activities it seeks to enjoin would irreparably damage Bayer as a

corporation given these facts. Indeed, with the exception of citing two snippets of Ms. Holtz's trial testimony, Bayer presents *absolutely no evidence* in support of its request for a permanent injunction.

Bayer's principal argument for "irreparable harm" is to suggest that an injunction is virtually automatic in a Hatch-Waxman action following a finding of infringement. That is wrong. The Hatch-Waxman statute makes an injunction permissive, not mandatory, 35 U.S.C. § 271(e)(4)(B). An injunction under § 271(e)(4)(B) requires proof of irreparable harm under the four-factor *eBay* test, just like any other injunction. *See Alcon, Inc. v. Teva Pharm. USA, Inc.*, No. CIV. 06-234-SLR, 2010 WL 3081327, at *2-3 (D. Del. Aug. 5, 2010) (holding that prevailing Hatch-Waxman plaintiff's request for injunction was "seriously undermined by its failure to prove that it has suffered irreparable harm"). After all, that is why this Court ordered the parties to brief the issue and gave Bayer the opportunity to present evidence.

None of Bayer's cases establish a *per se* rule requiring the award of an injunction in a Hatch-Waxman case, nor could they. In each of the two Delaware cases Bayer cites—*In re Armodafinil Patent Litig. Inc.*, 939 F. Supp. 2d 456, 503 (D. Del. 2013) and *Pfizer Inc. v. Teva Pharms. U.S.A., Inc.*, 882 F. Supp. 2d 643, 731-32 (D. Del. 2012)—this Court entered an injunction that was apparently undisputed, because the Court made no factual findings under *eBay*'s four-factor test that otherwise would be required. *See Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1352 (Fed. Cir. 2009) (failure to consider *eBay* factors and failure to make any factual findings regarding those factors was an abuse of discretion). By contrast, in *Allergan, Inc. v. Apotex Inc.*, No. 1:10-CV-681, 2013 WL 1750757, at *2 (M.D.N.C. Apr. 23, 2013), *rev'd on other grounds*, 754 F.3d 952 (Fed. Cir. 2014), the plaintiff actually presented evidence of irreparable harm, including evidence of the importance of the plaintiff's drug product to its overall corporate revenues—evidence that is wholly missing here. *Id.* at *3. Finally, the two unpublished New Jersey cases Bayer cites were vacated, have no precedential value, and have been contradicted by controlling law. Ltr. at 2. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1359 (Fed. Cir. 2013) ("there is no presumption of irreparable harm upon a finding of patent infringement."); *see also IMX, Inc. v. LendingTree, LLC*, 469 F. Supp. 2d 203, 224 (D. Del. 2007) (recognizing "now-overturned presumption that a patent holder is irreparably harmed upon a finding of infringement").

It appears that *Alcon* is the only written authority from this District substantively addressing the present issue in the context of a Hatch-Waxman case—and it explicitly holds that a prevailing plaintiff was not entitled to an injunction because the plaintiff failed to *prove* irreparable harm. 2010 WL 3081327, at *2-3. Bayer ignores *Alcon*, despite the fact that Watson cited it prominently in its previous letter and, thereby, concedes it has no response.

Apart from its erroneous legal argument, Bayer presents three meritless assertions for why it would supposedly be irreparably harmed.

*First*, Bayer argues it would be irreparably harmed because it would have to "undertake extensive monitoring" of Watson's internal activities in order to identify what it calls "illegal activity," and that it would be "highly uncertain" whether it could detect that activity. Ltr. at 3. Bayer's assertion only supports the conclusion that no irreparable harm exists; its professed

inability to identify harm to itself despite potentially "extensive monitoring" is a stark admission that any harm to Bayer would not be irreparable—*it would not even be detectable*. Further, Bayer does not explain, let alone submit any evidence, for why it would need to engage in "extensive monitoring" of Watson's internal activities, or what that monitoring would entail.[1]

***Second***, Bayer argues that absent an injunction, it might have to "relitigate" or "institut[e] duplicative litigation" against Watson in the event Watson engages in an act of infringement, and those litigation costs would be "an unquantifiable drain" on Bayer. Ltr. at 3. Bayer's argument is doubly wrong. The Federal Circuit has made crystal clear that litigation costs do not rise to the level of irreparable harm, as a matter of law. *See ActiveVideo Networks, Inc. v. Verizon Comm., Inc.*, 694 F.3d 1312, 1337 (Fed. Cir. 2012) ("Litigation costs are undoubtedly undesirable and may take funds away from other endeavors, but they are *not an irreparable harm in the injunction calculus*. . . Reliance on litigation costs to support a determination of irreparable harm was therefore legal error.") (emphasis added).[2] Further, Bayer's assertion about "relitigation" is wrong. Assuming Bayer sued Watson again for infringement based on some activity which was not enjoined, that case would not involve the "relitigation" of any issues. It would presumably involve a claim of damages—*e.g.*, a reasonable royalty rate—an issue that has never been at issue in this litigation.

***Third***, Bayer asserts that it would be irreparably harmed by a hypothetical product launch by Watson in the absence of any FDA approval. Bayer acknowledges that its argument for "irreparable harm" in this respect assumes that Watson will make a product launch in the absence of FDA approval—and in the face of substantial civil and criminal penalties. Ltr. at 3, n.1. The notion that Watson, a world-leading drug company, would voluntarily risk serious penalties to market an unapproved generic version of Natazia®—a tiny, niche product that Bayer does not even acknowledge on its website—is simply absurd.

The Court's decision in *Alcon* clearly confirms that there is no risk of harm to Bayer from such a hypothetical product launch. The Court explained:

> Because of the relief requested under 35 U.S.C. § 271(e)(4)(A), *supra*, Teva will not be able to market its proposed moxifloxacin opthalmic product prior to the day six months after the expiration of the '830 patent, *which necessarily prevents Teva from usurping any market share or goodwill from Alcon*. Further, any use of the patented drug by Teva must be private and non-commercial and, therefore,

---

[1] Bayer also does not explain its assertion for why it would be harmed in the unlikely situation Watson covertly worked with another pharmaceutical company to license its ANDA, and the other company then brought another Paragraph IV challenge. Even assuming such a situation were to occur, Bayer presents no evidence or argument for why that event would constitute irreparable harm to itself. It also does not explain how that circumstance would even be relevant to the injunction it has proposed, which would only apply to making, using, and selling the ANDA product itself, not *licensing* the ANDA, which is *not* a statutory act of infringement.

[2] One of the two district court decisions Bayer cites predates the Federal Circuit's decision, while the other case from 2014 only cites to pre-*ActiveVideo* decisions as support for its assertion that future litigation costs are sufficient to show irreparable harm.

> cannot irreparably harm Alcon's "full enjoyment and protection of [its] patent rights." *Id.* Accordingly, Alcon cannot establish irreparable harm sufficient to satisfy the first permanent injunction factor.

*Alcon, Inc.*, 2010 WL 3081327, at *2 (emphasis added). The same conclusion applies.

If that were not enough, Bayer has also failed to provide any evidence for how the impossibly unlikely, posited generic launch of Natazia® would do it any harm as a company. Bayer does not submit any data to explain the general magnitude of potential lost revenues or establish any harm to itself as a company. Instead, Bayer asks this Court to *assume* that a launch would cause irreparable harm. Ltr. at 3-4. The only evidence Bayer actually cites (Ltr. at 4) establishes the company thought little of Natazia®, so little that it chose not to advertise Natazia® during the pendency of this litigation. *See* Ex. A to Bayer's brief. Even assuming that Watson launched its generic product without FDA approval *and* took every dollar of market share from Bayer, it is highly doubtful that Bayer would even feel the loss, given the size of the company and the *de minimis* market for Natazia®. Indeed, that tiny market for Natazia® explains why Bayer has not even acknowledged the product on its website or the litigation in its recent annual report. Ex. 3, 4. But the Court need not speculate about it, since Bayer has declined to provide evidence to support its claim. *See Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990) (rejecting claim that potential for lost sales demonstrates irreparable harm because "acceptance of that position would require a finding of irreparable harm to every manufacturer/patentee, regardless of circumstances"); *IMX*, 469 F. Supp. 2d at 203 (denying injunction where plaintiff "put forward no evidence of irreparable harm resulting from defendant's infringement, for example, market or financial data, to support its sweeping statements.").

## II.  Bayer has adequate legal remedies absent an injunction.

Apart from its failure to show irreparable harm, Bayer has also failed to show the inadequacy of its other remedies—monetary and statutory—for any prospective patent infringement. Watson has already stipulated to the mandatory relief provided under 35 U.S.C. § 271(e)(4)(A), which prevents the approval of the ANDA until the expiration of Bayer's '577 patent. As this Court observed in *Alcon*, this remedy "effectively precludes practice of the ['577 patent] outside of the context of experimentation . . . until after the patent's expiration." 2010 WL 3081327, at *3. In that case, the Court concluded: "Without more, Alcon cannot prove that an adequate remedy at law does not exist[.]" *Id.* The same conclusion applies here as well.

## III.  The balance of the harms favors Watson.

The third part of the *eBay* test involves balancing the respective harms to Bayer, in the absence of an injunction, and to Watson, in the event of an injunction. Because Bayer has not identified any cognizable harm to itself absent an injunction, there is nothing for Bayer to place on the equitable scale balancing the harms. On the other hand, entering an injunction—particularly the overbroad one Bayer requests—would harm Watson. Contrary to Bayer's assertion, the proposed injunction would not "merely solidif[y] the status quo." There is no injunction in place that prevents Watson from making or using or experimenting with its ANDA

product. That would be a new prohibition that is both overbroad—it could potentially chill further experimentation on the product—and unjustified in light of the absence of any proof of harm by Bayer.

### IV. The public interest counsels against an injunction.

Bayer's argument on the "public interest" prong consists of quoting platitudes about how the public interest supports enforcing patent rights in order to encourage innovation, and arguing that the public interest "is served by avoiding the unnecessary and duplicative litigation." As to the latter point, Bayer has not explained how subsequent litigation would be duplicative. Indeed, it would not be. Moreover, nobody is seeking to compel Bayer to bring subsequent litigation to address hypothetical, future conduct, which, by its speculative nature, cannot be shown to cause harm.

As to the former point, the policy to promote innovation exists in every case. What is absent here is any logical connection between that general notion and the injunction Bayer seeks to impose on Watson, in the absence of any ability by Watson to legally launch its product until FDA approval. This Court said it best:

> Although there is a "significant public interest in encouraging investment in drug development and protecting the exclusionary rights conveyed in valid pharmaceutical patents," id., enjoining Teva from use of the '830 patent does not "promote the Progress of ... useful Arts." U.S. Const. art. I, § 8, cl. 8. On the contrary, because Teva cannot market its drug during the term of the patent, the only effect of an injunction would be to deprive the public of the benefit of Teva's developmental efforts. Because Alcon has not shown irreparable harm, the incentives provided "to inventors to risk the often enormous costs in terms of time, research, and development," are not implicated here.

*Alcon, Inc.*, 2010 WL 3081327, at *3. Here too, Bayer's proposed injunction would serve only to chill legitimate investigation, manufacture, and use of Watson's ANDA product, and has no rational connection to incentivizing Bayer or the public in making new inventions. Bayer's corporate interests are completely protected by the mandatory stay of FDA approval required under 35 U.S.C. § 271(e)(4)(A), and its proposed injunction does not further any public interest.

For all of these reasons, Bayer's request for an injunction should be denied.

Respectfully,

Dominick T. Gattuso (#3630)

Enclosures
cc:  Clerk of Court (Via Hand Delivery; w/ encl.)
     All Counsel of Record (Via Electronic Mail; w/ encl.)